******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ELLIOTT ENTERPRISES, LLC *v.* GEORGETTE
D. GOODALE ET AL.
(AC 37174)

Lavine, Sheldon and Flynn, Js.

*Argued November 17, 2015—officially released June 28, 2016*

(Appeal from Superior Court, judicial district of

Hartford, Housing Session, Woods, J.)

*Walter A. Twachtman, Jr.,* for the appellants (defendants).

*Andrew P. Barsom,* with whom, on the brief, was *Alena C. Gfeller,* for the appellee (plaintiff).

*Opinion*

LAVINE, J. In this summary process action, the defendant tenants, Georgette D. Goodale and Marlborough Country Bakery & Deli, Inc.,[1] appeal from the judgment of the trial court in which the court found that the defendants had violated their lease agreement (lease) and granted possession of the leased premises to the plaintiff landlord, Elliott Enterprises, LLC. The trial court rendered judgment of possession in favor of the plaintiff on the ground that the defendants had failed to pay sewer charges and late fees due under the lease. On appeal, the defendants claim that the trial court erred by failing to consider that they had overpaid the plaintiff real estate taxes, which were a component of the rent pursuant to the lease, in an amount greater than what the plaintiff claimed they owed for the sewer charges and late fees.[2] The defendants also claim that the trial court erred in determining that they had failed to prove the defense of equitable nonforfeiture. We reverse the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The plaintiff owns a shopping center in Marlborough and has rented two units of the property to the defendants since June, 2002. The defendants have operated a bakery on the premises since that time. The initial lease included an option to extend the lease term. The lease has been extended twice for five year periods, with the most recent extension due to expire in June, 2017. The lease provided that rent was due on the first of each month and that the defendants would incur a late charge of 5 percent of the amount of rent due and unpaid if they did not pay rent by the fifth of each month. Section 1 of the lease, entitled "Rent for Demised Premises," states in relevant part: "*RENT . . . shall consist* each month of the sum of the FIXED MINIMUM MONTHLY RENTAL[3] . . . *together* with the TENANTS' pro-rata share of any INCREASES IN PROPERTY TAXES, *together* with any unpaid TENANTS' UTILITIES as described in the SCHEDULE and this LEASE."[4] (Emphasis added.)

Section 18 of the lease, entitled "Sewer Usage and Assessment Fees," states that "[i]n the event that during the term of this LEASE city or municipal sewers are installed in a manner so as to serve the DEMISED PREMISES, TENANTS agree to pay its prorata share of any and all sewer usage charges assessed against the LANDLORD and/or the DEMISED PREMISES." In December, 2011, Marlborough installed sewers that served the demised premises. As we explain in part I of this opinion, all of the charges listed in § 1 of the lease were components of the rent, but the plaintiff billed the defendants separately for each component.

The plaintiff claimed that the defendants had failed to pay the "fixed minimum monthly rental" component

of the rent for April, 2013, failed to pay the sewer charges since Marlborough had installed the sewers, and failed to pay late fees that had accrued due to several instances in which the defendants did not pay the rent before the fifth day of the month. The plaintiff served the defendants with a notice to quit on April 15, 2013. On April 24, 2013, the plaintiff brought a four count action for summary process, alleging (1) nonpayment of rent,[5] (2) termination of the lease due to failure to pay sewer use charges in accordance with §§ 1d and 18 of the lease, (3) termination of the lease due to nonpayment of late fees as required by the lease, and (4) termination of the right or privilege to occupy.

In their answer, the defendants denied that they had breached the terms of the lease by failing to pay the "fixed minimum monthly rental" charge, sewer use charges, or late fees due under the lease. They also denied that their right or privilege to occupy the premises had expired. They filed special defenses, alleging: (1) as to count one, that the plaintiff knowingly and intentionally miscalculated the rent due under the lease, causing the defendants to overpay the amount of the rent after the second year of the lease, and that the April, 2013 base rent and escalator were paid and accepted by the plaintiff; (2) as to count two, that the plaintiff overcharged the defendants for the sewer betterment assessment and use charges due under the lease; (3) as to count three, that the plaintiff neither billed the defendants for late fees, nor were late fees due given that the defendants have paid or overpaid the rent, that the plaintiff waived any right to the late fees, and that the plaintiff did not conduct itself in good faith and fair dealing and, as a result, should not be entitled to any late fee; (4) as to count four, that the notice to quit was improper and unjustified because the defendants have not defaulted under the lease in the payment of rent, sewer charges, or late fees; and (5) as to all counts, that the defendants acted with clean hands throughout the landlord-tenant relationship, and that the defense of equitable nonforfeiture operates in the defendants' favor to prevent an inequitable and unjustified termination of the lease.

The summary process action was tried over eight days between October 7, 2013 and February 24, 2014. On September 8, 2014, the court issued its memorandum of decision. As to count one, the court found that the notice to quit for failure to pay the fixed monthly rental charge for April, 2013, had been served prematurely. The court thus concluded that it lacked subject matter jurisdiction over count one. As to counts two and three, the court found that the defendants had violated the lease by failing to pay the sewer use charges and late rent fees. The court concluded, as to count four, that the plaintiff had failed to establish by a preponderance of the evidence that the defendants' right to occupy the premises should be extinguished. The court rejected

all of the defendants' special defenses, concluding that the plaintiff had properly applied the escalator clause to the yearly increase of the fixed minimum monthly rental. It also rejected the defendants' defense of equitable nonforfeiture. Although the court found that the defendants had overpaid the real estate taxes due under the lease, it stated that it lacked jurisdiction over any monetary claims. The court concluded that the defendants had wilfully failed to pay the sewer use charges and late fees, and, thus, failed to act with clean hands. See *Cumberland Farms, Inc.* v. *Dairy Mart, Inc.*, 225 Conn. 771, 778, 627 A.2d 386 (1993) ("[e]quitable principles barring forfeitures may apply to summary process actions for nonpayment of rent if: (1) the tenant's breach was not willful or grossly negligent; (2) upon eviction the tenant will suffer a loss wholly disproportionate to the injury to the landlord; and (3) the landlord's injury is reparable"). The court issued an equitable final stay of execution through March 31, 2015, provided that the defendants continued to make proper use and occupancy payments.

The defendants filed a motion asking the court to articulate: (1) its interpretation of the escalator clause; (2) why it did not apply the overcharge of the real estate taxes against the amount owed for the sewer charges and late fees; (3) why it did not address the defendants' claim that the lease provided for rent abatement pursuant to the force majeure clause; and (4) which of their specific actions constituted wilful and grossly negligent conduct in failing to pay the claimed rent. In its articulation, the court stated that it had applied the escalator clause correctly and denied the request for further articulation. The court denied the request for articulation regarding the overpayment of real estate taxes, stating that the defendants "never pleaded said defense of set-off in their answer or special defenses." The court also denied the request for articulation as to the force majeure clause and the court's finding that the defendants' actions were wilful and grossly negligent. This appeal followed.

After oral argument in this court, we ordered the trial court to articulate its factual findings as to: (1) the total amount of additional rent found due and unpaid from the defendants to the plaintiff, pursuant to § 18 of the lease, as additional rent for the defendants' aliquot portion of sewer use and sewer assessment charges; (2) the total amount of any late charges found due and unpaid from the defendants to the plaintiff; and (3) the total amount that the defendants overpaid the plaintiff as additional rent for the defendants' pro rata share of the real estate taxes. The trial court articulated that the defendants had failed to pay the sewer fees and found "the amount of $2999.60 as the total amount of additional rent found due and unpaid, as additional rent for the defendants' aliquot portion of sewer use and sewer assessment charges." The court also articulated that

the defendants had failed to pay $942.43 in late fees. Notably, the court determined that the defendants had overpaid the real estate taxes by $15,329.53.[6]

## I

Prior to addressing the defendants' claim that the court erred in failing to consider that they had overpaid the real estate taxes as rent, we set forth the applicable standard of review and legal principles. Whether the trial court properly found that the defendants breached the lease by failing to tender rent is a question of fact. "Factual findings are subject to a clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In order to prevail in a summary process action alleging nonpayment of rent, a landlord must show that the tenant failed to tender rent prior to the service of the notice to quit." (Citations omitted; internal quotation marks omitted.) *19 Perry Street, LLC* v. *Unionville Water Co.*, 294 Conn. 611, 626, 987 A.2d 1009 (2010).

"In construing a written lease . . . three elementary principles must be [considered]: (1) The intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; [and] (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. . . . Where the language of a written lease is unambiguous, our review of the trial court's interpretation of the lease agreement involves a question of law subject to plenary review." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Firstlight Hydro Generating Co.* v. *First Black Ink, LLC*, 143 Conn. App. 635, 640, 70 A.3d 174, cert. denied, 310 Conn. 913, 76 A.3d 639 (2013).

Our resolution of this issue turns on the definition of rent under the terms of the lease. The plaintiff and the trial court treated rent as the "fixed minimum monthly rental" pursuant to § 1a of the lease. Under the plain language of the lease, however, rent consists of multiple components, including the "fixed minimum monthly rental," the defendants' pro rata share of real estate taxes, and the applicable utility charges. This definition of rent, as comprised of multiple components, comports with the statutory definition of rent in General Statutes § 47a-1 (h), which provides that rent encompasses "all periodic payments to be made to the landlord under the rental agreement."

Recognizing that under the subject lease, rent con-

sisted of multiple components, we conclude that the trial court inaccurately calculated the amount the plaintiff was due and the amount the defendants paid as rent. The trial court failed to recognize that the defendants had overpaid the rent. The trial court rendered judgment of possession in favor of the plaintiff because it found that the defendants wilfully had failed to pay the sewer charges, which are a component of the rent under the lease. This led to the conclusion that the defendants had failed to pay rent due under the lease. Looking at nonpayment of each component of the rent in this piecemeal manner, however, fails to take into account the fact that, under the lease, the real estate taxes are also a component of the rent. The net result is that the court found that the defendants violated the lease by failing to pay the sewer charges as a component of the rent, despite the defendants having actually overpaid the rent by $12,329.93.[7] On the basis of our review of the record, we conclude that the trial court erred by not considering the overpayment of the real estate taxes as a component of the rent in concluding that the defendants had failed to pay the sewer charges.[8] In other words, the court should have considered the total amount of rent the defendants paid, not what they owed for each component of the rent.

## II

We next consider the defendants' claim that the trial court erroneously rejected their special defense of equitable nonforfeiture, which was based on their overpayment of the real estate taxes. The trial court rejected the defense of equitable nonforfeiture because it found that the defendants were wilful and grossly negligent by failing to pay the late fees and sewer charges.

The following additional facts are relevant to this claim. The trial court found that the defendants had violated the lease by wilfully failing to pay the late fees and rendered judgment of possession in favor of the plaintiff. The late fees, however, are not rent under the lease but, rather, were a charge for the defendants' failure to tender rent prior to the fifth of the month. The trial court found that the defendants had paid rent late and incurred late fees for the months of March, April, and July, 2012, and March, 2013. The late fees assessed on the basis of the rent due at the time of the late payments totaled $942.43.

The following standard of review and legal principles are applicable to this claim. "The doctrine of equitable nonforfeiture is a defense implicating the right of possession that may be raised in a summary process proceeding, and is based on the principle that [e]quity abhors . . . a forfeiture." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, 279 Conn. 90, 106 n.15, 900 A.2d 1242 (2006). "Equitable principles barring forfeitures may apply to summary process actions for nonpayment of

rent if: (1) the tenant's breach was not [wilful] or grossly negligent; (2) upon eviction *the tenant will suffer a loss wholly disproportionate to the injury to the landlord*; and (3) the landlord's injury is reparable. . . . Moreover, [t]he doctrine against forfeitures applies to a failure to pay rent in full when that failure is accompanied by a good faith intent to comply with the lease or a good faith dispute over the meaning of a lease." (Citation omitted; emphasis added; internal quotation marks omitted.) *19 Perry Street, LLC* v. *Unionville Water Co.*, supra, 294 Conn. 630.

"In reviewing claims of error in the trial court's exercise of discretion in matters of equity, we give great weight to the trial court's decision. . . . [E]very reasonable presumption should be given in favor of its correctness. . . . The ultimate issue is whether the court could reasonably conclude as it did. . . . Our practice in this [s]tate has been to give a liberal interpretation to equitable rules in working out, as far as possible, a just result. . . . Although we ordinarily are reluctant to interfere with a trial court's equitable discretion . . . we will reverse where we find that a trial court acting as a court of equity could not reasonably have concluded as it did . . . or to prevent abuse or injustice." (Citations omitted; internal quotation marks omitted.) *PIC Associates, LLC* v. *Greenwich Place GL Acquisition, LLC*, 128 Conn. App. 151, 155–56, 17 A.3d 93 (2011).

In the present case, the defendants raised the defense of equitable nonforfeiture in the trial court and specifically asserted that they had overpaid portions of the rent as a defense to the plaintiff's three counts of nonpayment of charges due under the lease. The special defense of equitable nonforfeiture was thus properly raised. In regard to the court's finding that the defendants were wilful and grossly negligent, the defendants raised as special defenses that they did not owe money for the charges alleged in counts two and three because they had overpaid all amounts due under the lease. The court erred in its determination that the defendants failed to prove the first prong of equitable nonforfeiture, that is, that the defendants' breach of the lease was not wilful or grossly negligent. The record shows that the defendants had a good faith dispute about the terms of the lease and payments due, as the defendants have overpaid the plaintiff by $11,387.50 due to the plaintiff's erroneous calculation of the pro rata share of the real estate taxes that it billed them. We therefore disagree that the defendants failed to prove that their breach was not wilful or grossly negligent. The trial court failed to consider the second and third prongs of equitable nonforfeiture, whether the tenant will suffer a loss wholly disproportionate to the injury to the landlord, and whether the landlord's injury is reparable. Pursuant to the court's factual finding that the defendants overpaid the plaintiff by $11,387.50, it is clear that the final

two prongs are satisfied as well. Under the present circumstances, we conclude that the eviction of the defendants is wholly disproportionate to the plaintiff's injury and that any injury the plaintiff suffered from the defendants' failure to pay the late fees and sewer charges was remedied by their substantial overpayment of the real estate taxes. We thus conclude that the trial court abused its discretion by rejecting the special defense of equitable nonforfeiture.

The judgment is reversed and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.

[1] Goodale is the president and principal stock holder of Marlborough Country Bakery & Deli, Inc.

[2] The defendants additionally claim that the trial court erred by not addressing their claim for rent abatement pursuant to a force majeure clause in the lease. The defendants also assert that the trial court erred in not considering their claim that the plaintiff erroneously applied the escalator clause that allowed the plaintiff annually to raise the fixed minimum monthly component of the rent, resulting in their being overcharged in an amount that exceeded the plaintiff's claim for sewer charges and late fees. Because our resolution of the claims addressed in this opinion is dispositive of this appeal, we need not address the defendants' additional arguments.

[3] The schedule stated that the "fixed minimum monthly rental" was $3150 beginning in June, 2002. This amount increased annually pursuant to the escalator clause in the lease.

[4] Section 1 of the lease further states: "Rent shall consist of:

"1a. FIXED MINIMUM MONTHLY RENTAL

The amount of the FIXED MINIMUM MONTHLY RENTAL shall be the amount specified in the SCHEDULE.

1b. TENANTS' SHARE OF CHANGED MONTHLY EXPENSES

The amount of the TENANTS' SHARE OF CHANGED MONTHLY EXPENSES shall be the dollar amount of the percentage increase set forth in the SCHEDULE as the ESCALATOR. This amount shall be cumulative from year to year.

1c. TENANTS' PRORATA SHARE OF REAL ESTATE PROPERTY TAXES

The TENANTS' PRO-RATA SHARE OF REAL ESTATE PROPERTY TAXES shall be the amount of any real property taxes, attributable to the TENANTS' occupancy of the DEMISED PREMISES based upon the ratio of the total square footage occupied by the TENANTS to the total square footage of the SUBJECT PREMISES and personal property taxes for all personal property within, appurtenant to or servicing the DEMISED PREMISES. TENANTS agree to pay this amount, in month installments as RENT.

1d. TENANTS' UTILITY AND MAINTENANCE CHARGES

TENANTS shall pay for any utility services to the DEMISED PREMISES, including but not limited to, telephone, electricity, natural or propane gas, cable television, trash pickup, servicing grease traps if applicable, or septic tanks, if applicable, or for like services to the DEMISED PREMISES directly to such provider. . . ."

[5] Count one specifically alleged that the defendants had failed to pay the fixed monthly rental component of the rent for April, 2013.

[6] The overpayment of the real estate taxes resulted from a discrepancy in the assessment of the square footage of the demised premises and the plaza as a whole. In its articulation, the court found that the defendants were charged for their pro rata share of the real estate taxes on an assessment of 2610 square feet of a total of 30,148 square feet in the plaza. The court determined that, pursuant to the lease, the defendants should have paid their pro rata share for 2400 square feet of a total of 37,347 square feet in the plaza as listed in the town assessor's records. Although the rent was to be paid in monthly installments pursuant to the lease, the record reflects that the plaintiff billed the defendants semiannually for their pro rata share of the real estate taxes.

[7] This amount reflects the overpayment of the real estate taxes after subtracting what the defendants owed for the sewer charges, as both figures were components of the rent. We note that the late fees are not a component of the rent, but, rather, a separate contractually agreed upon charge for the

defendants' failure to tender rent by the date specified in the lease. See *Grunsell* v. *Saaf*, Superior Court, judicial district of Fairfield, Docket No. CV-00-0338514-S (January 29, 2002) (defendant entitled to recover late fees under terms of parties' lease). We consider the trial court's conclusion that the defendants violated the terms of the lease because they failed to pay the late fees in part II of this opinion.

[8] The trial court stated in its memorandum of decision regarding the defendants' motion for articulation that it declined to consider the defendants' overpayment of the rent because the defendants did not plead the defense of setoff in their answer or special defenses. We do not believe a setoff needed to be pleaded, however, because the amount the defendants claim that they overpaid arises out of the lease, which is the subject of the complaint, rather than an independent transaction. See *Savings Bank of New London* v. *Santaniello*, 130 Conn. 206, 210, 33 A.2d 126 (1943) ("A counterclaim arises out of the same transaction described in the complaint. A set-off is independent thereof."). A counterclaim ordinarily does need to be pleaded as a special defense; see Practice Book § 10-54; however, the plaintiff still bore the burden of demonstrating that the defendants had failed to pay rent due under the lease. The record reflects that the plaintiff failed to meet that burden, as the court found that the defendants substantially overpaid the real estate taxes, which were due as rent under the lease.