******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# NOROTON HEIGHTS SHOPPING CENTER, INC. *v.* PHIL'S GRILL, LLC
## (AC 44042)

Prescott, Moll and Lavery, Js.

### *Syllabus*

The plaintiff landlord brought a summary process action seeking to gain possession of certain property in a shopping center occupied by the defendant tenant pursuant to the parties' commercial lease. The lease contained a relocation clause, which provided the plaintiff with the ability to require the defendant to vacate the property upon the offer of reasonably similar substitute premises, and to terminate the lease if the defendant refused the substitute location, should the plaintiff elect to redevelop the property. The relocation clause further provided that the plaintiff would be responsible for furnishing the substitute premises and that the defendant would be responsible for performing work in the substitute premises to prepare it for prompt occupancy. After the planning and zoning commission approved the plaintiff's plan for redevelopment of the shopping center, the plaintiff sent a substitution notice to the defendant, including plans showing the proposed substitute premises, which had not yet been built. The defendant did not receive this notice and did not become aware of it until more than one year later, at which point the plaintiff informed the defendant that it had waived its relocation rights by not responding to the substitution notice. Thereafter, the plaintiff served the defendant with a notice to quit and filed the summary process action. The trial court found that the defendant had refused to negotiate with the plaintiff and violated the express language of the lease by refusing to act in good faith with the plaintiff's relocation plan, and it rendered a judgment of immediate possession for the plaintiff. On appeal, the defendant claimed that the court improperly interpreted the lease's relocation clause. *Held* that the trial court's finding that the defendant breached the lease by violating the terms of the relocation clause was clearly erroneous: the language of the relocation clause was clear and unambiguous and provided that the plaintiff was permitted to terminate the lease pursuant to the relocation clause only if the defendant refused to relocate to the substitute premises after receiving valid notice from the plaintiff, and no language in the relocation clause required the defendant to negotiate the terms of relocation or to accept or to reject, in writing, proposed substitute premises before it was built; moreover, the relocation clause implicitly provided that the substitute premises was required to be in existence as a condition precedent to the plaintiff's ability to give the defendant a valid notice of substitution, as an interpretation to the contrary would yield absurd results because the defendant could be required to quit possession of the property and close its business for an indefinite period of time while the substitute premises was constructed and waive its ability to seek damages from the plaintiff for lost profits during that period, which contradicted the clear terms of an amendment to the lease providing that the plaintiff would reasonably cooperate with the defendant and, in good faith, minimize any material or adverse impact of its redevelopment on the conduct of the defendant's business; furthermore, the notice of substitution that the plaintiff provided to the defendant was not valid, as it was undisputed that the substitute premises had not been constructed at the time that the notice of substitution was issued, thus, a condition precedent to issuing a valid notice of substitution was not fulfilled, and the defendant's duty to perform under the relocation clause was never triggered.

Argued May 10—officially released September 7, 2021

### *Procedural History*

Summary process action, brought to the Superior Court in the judicial district of Stamford-Norwalk,

Housing Session at Norwalk, and tried to the court, *Spader, J.*; judgment for the plaintiff, from which the defendant appealed to this court. *Reversed; judgment directed.*

*Scott C. DeLaura*, for the appellant (defendant).

*Abram Heisler*, for the appellee (plaintiff).

*Opinion*

LAVERY, J. In this summary process action, the defendant tenant, Phil's Grill, LLC, appeals from the trial court's judgment of possession rendered in favor of the plaintiff landlord, Noroton Heights Shopping Center, Inc. On appeal, the defendant claims that the trial court was incorrect in finding that the defendant violated the relocation clause of a commercial lease executed by the parties. We agree with the defendant and, accordingly, reverse the court's judgment of immediate possession in favor of the plaintiff.

The following facts and procedural history are relevant to this appeal. The plaintiff is the owner of Noroton Heights Shopping Center (shopping center) in Darien. On November 12, 2010, the plaintiff entered into a commercial lease with the defendant for retail space (demised premises) located within the shopping center. The lease was for an initial term of five years, commencing on October 1, 2010, and continuing through September 30, 2015, and contained three renewal options. At the time the lease was entered into, the plaintiff was contemplating the redevelopment of the shopping center. As a result, the lease contained a relocation clause. Subsection A of the relocation clause provides in relevant part that "[t]he Landlord may, at its option, before or after the Commencement Date, and during any option renewal period pursuant to Section 40 hereof, elect by notice to the Tenant to require the Tenant to vacate and surrender the Demised Premises, and to substitute for the Demised Premises other reasonably similar space elsewhere in the Shopping Center (the 'Substitute Premises') designated by the Landlord (provided that the Substitute Premises contains at least the same square foot area as the Demised Premises) and to move the Tenant to the Substitute Space. Landlord's notice shall be accompanied by a plan of the Substitute Premises, which such notice shall set forth the square foot area of the Substitute Premises. The Tenant shall vacate and surrender the Demised Premises and shall occupy the Substitute Premises promptly (and in any event not later than fifteen [15] days after the Landlord has substantially completed any work to be performed in the Substitute Premises pursuant to [subsection] B hereof). . . . Should the Tenant refuse to relocate to the Substitute Space, the Landlord may, at its option, by notice to the Tenant, elect to terminate this Lease, which such termination shall be effective thirty (30) days after the date of such termination notice."

Subsection B of the relocation clause further provides in relevant part that "the Landlord shall, at the Landlord's expense, do the following, (i) furnish and install in the Substitute Premises fixtures, improvements and appurtenances at least equal in kind and quality to those contained in the Demised Premises at the time such notice of substitution is given by the Landlord . . . .

The Tenant agrees to cooperate with the Landlord so as to facilitate the completion by the Landlord of its obligations under this Section and the prompt surrender of the Demised Premises, and further agrees to promptly perform in the Substitute Premises any work to be performed therein by the Tenant to prepare the Substitute Premises for the Tenant's occupancy."

Thereafter, the defendant opened a restaurant at the demised premises. On February 29, 2016, the parties renewed the lease and extended it through September 30, 2020. The first amendment to indenture of lease further referenced the possible redevelopment of the shopping center. Section 6 of the amendment, titled "Shopping Center Redevelopment," provides in relevant part that "Tenant acknowledges that Landlord intends to redevelop the Noroton Heights Shopping Center (the 'Shopping Center'), in which the Rental Premises (as defined in the Lease) are located. Without limiting Landlord's relocation right set forth in Section 39 of the Lease or Landlord's rights or ability to perform such redevelopment in general, Landlord agrees to reasonably cooperate with Tenant in good faith to the extent reasonably practical during any redevelopment of the Shopping Center to minimize any material and adverse impact of such redevelopment on the conduct of Tenant's business at the Rental Premises during the hours when the restaurant operated by Tenant is customarily open in the ordinary course of business . . . . In the event Tenant's business is materially and adversely impacted by Landlord's redevelopment activities at the Shopping Center, the parties agree to mutually explore alternative avenues of reducing such material and adverse impact to the extent feasible, and, if not feasible or commercially prudent under the then-prevailing circumstances, Tenant shall have the right, as its sole and exclusive remedy, to terminate the Lease upon ten (10) business days' prior written notice to Landlord. Tenant shall not be entitled under such circumstances, and hereby waives, all claims against Landlord for any compensation or loss of use of the Rental Premises occasioned by such redevelopment activities." (Emphasis omitted.) Apart from Section 6, the amendment to the lease did not further address the relocation clause and provided that the lease, "as amended by this Amendment, will continue in full force and effect in accordance with its terms."

In 2017, the plaintiff obtained approval from the Planning and Zoning Commission of the Town of Darien (zoning commission) for the phased redevelopment of the shopping center. Pursuant to the phased plan, the plaintiff would redevelop the shopping center by razing a building, building a new building in its place, moving an existing tenant into the new building, and then razing the building that the tenant previously had occupied. In December, 2017, after the phased plan was approved, representatives for the plaintiff met with representa-

tives for the defendant to discuss potential substitute premises. During the meeting, the defendant expressed interest in one of the proposed substitute premises and indicated to the plaintiff that it would be willing to move into that spot.

On April 4, 2018, the plaintiff sent a letter to James Calcagnini, the sole member of the defendant, regarding the proposed substitute premises (notice of substitution). The letter served "as formal notice to you of Landlord's election to require you to vacate and surrender your current leased space and the substitution of other reasonably similar space in the redeveloped Shopping Center as your new leased premises." Attached to the notice of substitution were two plans showing the location of the proposed substitute premises. The letter further requested that Calcagnini confirm in writing no later than April 19, 2018, that the proposed substitute premises was acceptable and that the plaintiff would assume that the defendant was unwilling to relocate to this space if no response was received by that date. The notice of substitution was sent to Calcagnini's principal place of residence via United Parcel Service (UPS) overnight delivery. Calcagnini, however, never received the notice of substitution.

On July 2, 2019, James Palmer, a principal of the plaintiff, met with Calcagnini. During the meeting, Palmer gave Calcagnini a bullet point list of topics to discuss. One of the bullet points stated that Calcagnini "waived his relocation rights by not responding to April 4, 2018 letter sent by [Palmer] via UPS showing proposed substitute space." This meeting was the first time that Calcagnini became aware of the notice of substitution. The July 2, 2019 meeting ended unsuccessfully, and Calcagnini mentioned getting an attorney involved after seeing the contents of the bullet points.

On July 31, 2019, the zoning commission approved an amended plan for the redevelopment of the shopping center. Under the new plan, the redevelopment would be conducted in a single phase rather than in multiple phases. That same day, Palmer hand delivered a termination of lease letter to the defendant at the demised premises. The termination of lease referenced the notice of substitution, stated that the defendant had failed to accept the proposed substitute premises identified in that notice, and stated that, as a result, the plaintiff was electing to terminate the lease pursuant to the relocation clause.

On August 30, 2019, the plaintiff served the defendant with a notice to quit. The plaintiff's notice to quit stated that it was electing to terminate the defendant's lease "for failure to accept a substitute premises which was offered to you on April 4, 2018." On September 23, 2019, the plaintiff filed a three count summary process complaint alleging (1) termination of lease by express stipulation, (2) lapse of time, and (3) occupancy by one

who originally had a right or privilege but such right or privilege has terminated. In response to the plaintiff's summary process complaint, the defendant asserted three special defenses: failure to perform a condition precedent, impossibility or impracticability, and unclean hands.[1] Trial was held over the course of two days on January 23 and February 14, 2020.

The court rendered judgment in favor of the plaintiff. In its memorandum of decision, the court found that, although the defendant had the right to possess the demised premises through September 30, 2020, the parties knew at the time of the execution of the lease and its amendment that the plaintiff was planning to redevelop the entire shopping center and that they contracted for this eventuality. The court also found that the "plaintiff continually attempted to involve the defendant in its relocation plans and at all times wished to provide the defendant with a substitute premises under the lease. In return for [its] good faith, the court believes [it] received the runaround, slowing down its attempted redevelopment. It is undisputed that the substituted premises was never 'completed' or ready for move in, in fact, to date, it has not yet been constructed. The plaintiff, after unsuccessfully negotiating in excess of a year with the defendant, gave up on its 'phased in' redevelopment plan and decided to redevelop the shopping plaza all at once. Certainly, it is doing so at a seven figure savings from the phased in plan, but the court believes that had the [defendant] ever expressed a desire to proceed with a move, the plaintiff would never have reached this business decision.

"By refusing to act in good faith as to the relocation plan, the [defendant] violated the express language of the lease and left the plaintiff with no option other than to terminate the lease and proceed with this action. . . . The defendant's refusal to fairly negotiate was akin to a refusal to relocate to the proposed substitute space, and as such, the plaintiff properly terminated the lease by the July 31, 2019 letter." Finally, the court found that the defendant had failed to meet its burden of proving its special defenses because "the notices given under the lease [were] proper and . . . the plaintiff acted in good faith in its negotiations and performed all conditions precedent to maintain this action." Accordingly, the court found for the plaintiff on counts one and three of its summary process complaint[2] and rendered a judgment of immediate possession for the plaintiff. This appeal followed.

The defendant claims on appeal that the court improperly interpreted the relocation clause of the lease. Specifically, the defendant contends that the court erred in finding that (1) the plaintiff could require it to accept a proposed substitute premises before it was constructed, (2) the defendant was required to issue a written response to accept or reject a proposed

substitute premises before it was built, (3) failure to respond in writing within fifteen days of the date of the notice of substitution constituted a rejection of the substitute premises to be built in the future and constituted a default supporting termination of the lease, (4) the defendant was required to negotiate the relocation of the demised premises and to accommodate the plaintiff's redevelopment plan, and (5) the notice of substitution was valid and that all conditions precedent to the plaintiff's ability to exercise its rights under the relocation clause were satisfied. In response, the plaintiff contends that the lease does not contain any language that required it to have completed construction of the substitute premises prior to giving notice of relocation and that the lease contemplated that work on the substitute premises would not be completed at the time that notice was given. We agree with the defendant that the court improperly interpreted the relocation clause.

To resolve the defendant's claims on appeal, we first must interpret the relocation clause of the lease. In doing so, we are guided by the following relevant legal principles. "The defendant's claim presents a question of contract interpretation because a lease is a contract, and, therefore, it is subject to the same rules of construction as other contracts. . . . The standard of review for the interpretation of a contract is well established. Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [when] there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is plenary]." (Internal quotation marks omitted.) *Sproviero* v. *J.M. Scott Associates, Inc.*, 108 Conn. App. 454, 468–69, 948 A.2d 379, cert. denied, 289 Conn. 906, 957 A.2d 873 (2008).

"When a party asserts a claim that challenges the trial court's construction of a contract, we must first ascertain whether the relevant language in the agreement is ambiguous. . . . If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . [If] the language of a contract is ambiguous, the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous. . . . A contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . Accordingly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . .

"[W]e accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract. . . . [If] the language is unambiguous, we must give the contract effect

according to its terms. . . . [If] the language is ambiguous, however, we must construe those ambiguities against the drafter. . . . Moreover, in construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous." (Citations omitted; internal quotation marks omitted.) *EH Investment Co., LLC* v. *Chappo, LLC*, 174 Conn. App. 344, 358, 166 A.3d 800 (2017). Thus, the "contract must be viewed in its entirety, with each provision read in light of the other provisions . . . . We will not construe a contract's language in such a way that it would lead to an absurd result." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Welch* v. *Stonybrook Gardens Cooperative, Inc.*, 158 Conn. App. 185, 198, 118 A.3d 675, cert. denied, 318 Conn. 905, 122 A.3d 634 (2015).

"In construing a written lease . . . three elementary principles must be [considered]: (1) The intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; [and] (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible." (Internal quotation marks omitted.) *Elliott Enterprises, LLC* v. *Goodale*, 166 Conn. App. 461, 469, 142 A.3d 335 (2016).

In the present case, we first conclude that the language of the relocation clause is clear and unambiguous and, therefore, the intent of the parties is a question of law. The relocation clause contains definitive contract language that clearly enumerates the obligations of the parties. Subsection A of the relocation clause provides that the plaintiff "may, at its option . . . elect by notice to the Tenant to require the Tenant to vacate and surrender the Demised Premises, and to substitute for the Demised Premises other reasonably similar space elsewhere in the Shopping Center . . . designated by the Landlord . . . and to move the Tenant to the Substitute Space. . . . The Tenant *shall vacate and surrender the Demised Premises and shall occupy the Substitute Premises promptly* . . . . Should the Tenant refuse to relocate to the Substitute Space, the Landlord may, at its option, by notice to the Tenant, elect to terminate the Lease . . . ." (Emphasis added.)

Pursuant to the plain and unambiguous language of subsection A of the relocation clause, the plaintiff could elect, after notifying the defendant, to have the defendant vacate the demised premises and to move the defendant into a substitute premises. If the plaintiff made such an election, then the defendant was required to move into the substitute premises. See *Boreen* v. *Boreen*, 192 Conn. App. 303, 321, 217 A.3d 1040 (use of

word " 'shall' " connotes requirement), cert. denied, 333 Conn. 941, 218 A.3d 1046 (2019). No language in the relocation clause expressly provides that the defendant was required to negotiate the terms of relocation with the plaintiff, including negotiating the location of the substitute premises or accommodating the plaintiff's redevelopment plans. There also is no language that obligates the defendant to accept or reject, in writing, a proposed substitute premises before it was built.[3] Instead, pursuant to the unambiguous language of the relocation clause, the defendant was required to vacate the demised premises and to move into the substitute premises after the plaintiff provided it with valid notice regarding the same. If the defendant refused to relocate to the substitute premises after receiving notice from the plaintiff, then, and only then, was the plaintiff permitted to terminate the lease pursuant to the relocation clause.

Moreover, the relocation clause implicitly provides that, as a condition precedent to the plaintiff's ability to give the defendant a valid notice of substitution, the substitute premises was required to be in existence at the time notice was given. "A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . . A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor. . . . If the condition is not fulfilled, the right to enforce the contract does not come into existence. . . . Whether a provision in a contract is a condition the nonfulfillment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract." (Internal quotation marks omitted.) *EH Investment Co., LLC* v. *Chappo, LLC*, supra, 174 Conn. App. 360.

In the present case, subsection A of the relocation clause provides that, after the defendant received a notice of substitution, the defendant "shall vacate and surrender the Demised Premises and *shall occupy the Substitute Premises promptly* (and in any event not later than fifteen [15] days after the Landlord has substantially completed any work to be performed in the Substitute Premises pursuant to [subsection] B hereof)." (Emphasis added.) Subsection A thus implicitly presupposes that the substitute premises already would be in existence at the time notice of substitution is issued. An interpretation to the contrary would render the "shall occupy the Substitute Premises promptly" language superfluous, as it would be impossible for the defendant to vacate the demised premises and then occupy promptly a substitute premises that had not yet been constructed. See *EH Investment Co., LLC* v. *Chappo, LLC*, supra, 174 Conn. App. 358 ("in construing contracts, we give effect to all the language included

therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous" (internal quotation marks omitted)); *Elliott Enterprises, LLC* v. *Goodale*, supra, 166 Conn. App. 469 ("the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible" (internal quotation marks omitted)).

Although the relocation clause does not contain any language expressly providing that the substitute premises had to be constructed prior to the plaintiff's ability to issue a valid notice of substitution, such an interpretation is implicit because an interpretation to the contrary would yield absurd results. See *Welch* v. *Stonybrook Gardens Cooperative, Inc.*, supra, 158 Conn. App. 198 ("[w]e will not construe a contract's language in such a way that it would lead to an absurd result"). In the plaintiff's view, the substitute premises did not need to be in existence at the time that notice of substitution was issued. If the relocation clause were construed in this manner, however, then the defendant, upon receiving a notice of substitution, would be required to close its business for an indefinite amount of time while the demised premises was razed and the substitute premises was constructed. The amendment to the lease also expressly provides that the defendant waives "all claims against Landlord for any compensation or loss of use of the Rental Premises occasioned by such redevelopment activities." The defendant, therefore, not only would be unable to make any money from its business if the plaintiff could force it to vacate the demised premises prior to the construction of the substitute premises, but it also would be unable to seek any damages from the plaintiff for its lost profits. This scenario, which would be possible under the plaintiff's interpretation of the relocation clause, creates an absurd and bizarre result, as we hardly can imagine that the defendant would agree to such terms. See *Grogan* v. *Penza*, 194 Conn. App. 72, 79, 220 A.3d 147 (2019) ("we presume that the parties did not intend to create an absurd result" (internal quotation marks omitted)); *Welch* v. *Stonybrook Gardens Cooperative, Inc.*, supra, 199 ("contractual documents are to be read as a whole and bizarre results are to be avoided").

Such a result also is bizarre because it contradicts the clear terms of the amendment to the lease. The amendment to the lease provides that the plaintiff agreed to "reasonably cooperate with Tenant in good faith to the extent reasonably practical during any redevelopment of the Shopping Center to minimize any material and adverse impact of such redevelopment on the conduct of Tenant's business . . . ." If the plaintiff could compel the defendant to vacate the demised premises before the substitute premises was built, then the defendant's business undisputedly would be materially and adversely impacted, as it would be unable to

operate its restaurant while the substitute premises was being constructed. In light of these considerations, and the absurd results that the plaintiff's interpretation of the relocation clause would produce, the relocation clause is more reasonably construed to require the existence of the substitute premises at the time a notice of substitution is issued. Accordingly, we conclude that the existence of the substitute premises was a condition precedent to the plaintiff's ability to issue a valid notice of substitution under the relocation clause.

Having interpreted the relocation clause of the lease, we next determine whether the court incorrectly found that the defendant breached the lease by violating the relocation clause. Whether a lease was breached presents a question of fact. See *Lynwood Place, LLC* v. *Sandy Hook Hydro, LLC*, 150 Conn. App. 682, 687, 92 A.3d 996 (2014). "Factual findings are subject to a clearly erroneous standard of review. . . . It is well established that [a] finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . . Our authority, when reviewing the findings of a judge, is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence. . . . The question for this court . . . is not whether it would have made the findings the trial court did, but whether in view of the evidence and pleadings in the whole record it is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id.

On the basis of the record before us, and in light of our interpretation of the relocation clause, we conclude that the court's finding that the defendant breached the lease by violating the terms of the relocation clause was clearly erroneous. In its memorandum of decision, the court found that, "[b]y refusing to act in good faith as to the relocation plan, the [defendant] violated the express language of the lease and left the plaintiff with no option other than to terminate the lease and proceed with this action. . . . The defendant's refusal to fairly negotiate was akin to a refusal to relocate to the proposed substitute space, and as such, the plaintiff properly terminated the lease by the July 31, 2019 letter." The relocation clause, however, contains no language that expressly requires the defendant to negotiate the terms of relocation, to participate in the process of identifying a substitute premises, or to give the plaintiff written acceptance or rejection of a proposed substitute premises that had not yet been constructed.[4] Instead, the relocation clause simply obligated the defendant to

surrender the demised premises and to move into the substitute premises upon receiving a valid notice of substitution from the plaintiff.

The notice of substitution that the plaintiff issued to the defendant, however, was not valid. As previously observed, the existence of the substitute premises was a condition precedent to the plaintiff's right to issue a notice of substitution to the defendant. It is undisputed that the substitute premises had not yet been constructed at the time that the notice of substitution was issued. A condition precedent to issuing a valid notice of substitution thus was not fulfilled. As a result, the defendant's duty to perform under the relocation clause was never triggered because the plaintiff's right to enforce it had not yet come into existence.[5] See *EH Investment Co.*, *LLC* v. *Chappo*, *LLC*, supra, 174 Conn. App. 360. Accordingly, we conclude that the court's finding that the defendant breached the lease by violating the terms of the relocation clause is unsupported by the record and, therefore, is clearly erroneous.[6] See *Lynwood Place*, *LLC* v. *Sandy Hook Hydro*, *LLC*, supra, 150 Conn. App. 687.

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.

[1] The defendant also filed a four count counterclaim, alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference, and violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The plaintiff moved to dismiss the defendant's counterclaim on the ground that the claims alleged therein may not be asserted in a summary process action. The court granted the motion to dismiss, concluding that "the defendant can pursue these claims in a separate cause of action, but not as counterclaims in the limited jurisdiction housing session of the Superior Court." The court's dismissal of the counterclaim is not at issue in this appeal.

[2] The court did not find for the plaintiff on count two of its complaint, which alleged a claim for lapse of time.

[3] Section 21 of the lease provides: "<u>Oral Agreements Excluded</u>. It is further agreed between Landlord and the Tenant that this Lease embodies the entire agreement between them, and that no amendments or modifications hereto shall become effective except by appropriate written endorsement hereof or separate written agreement supplemental hereto." (Emphasis in original.)

We agree with the defendant that the trial court was incorrect in finding that the defendant was obligated to negotiate in good faith with respect to the relocation plans of the plaintiff and to accommodate the plaintiff's relocation plans. Such findings contradict the express terms of the relocation clause of the lease.

[4] We are mindful that subsection B of the relocation clause provides that the "Tenant agrees to cooperate with the Landlord so as to facilitate the completion by the Landlord of its obligations under this Section and the prompt surrender of the Demised Premises, and further agrees to promptly perform in the Substitute Premises any work to be performed therein by the Tenant to prepare the Substitute Premises for the Tenant's occupancy." We do not interpret this clause, however, to require the defendant to negotiate the terms of relocation with the plaintiff, to participate in the selection of the proposed substitute premises, and to accept it *prior to its construction*. In context, this clause clearly is referring to the defendant's obligations to assist the plaintiff with furnishing and installing fixtures, improvements, and appurtenances in the substitute premises and to assist the plaintiff with its other responsibilities related to facilitating the defendant's move into the substitute premises. Nothing in this clause, or in the rest of the relocation clause, indicates that the defendant was required to cooperate with the plaintiff in identifying and accepting the substitute premises before it was

built. We will not import such an obligation into the lease in the absence of any language indicating that the parties intended to impose this duty on the defendant. See *Prime Locations of CT, LLC* v. *Rocky Hill Development, LLC*, 199 Conn. App. 642, 657, 237 A.3d 3 (2020) ("[I]t is well settled that we will not import terms into [an] agreement . . . that are not reflected in the contract. . . . A court simply cannot disregard the words used by the parties or revise, add to, or create a new agreement. . . . A term not expressly included will not be read into a contract unless it arises by necessary implication from the provisions of the instrument." (Citation omitted; internal quotation marks omitted.)).

[5] We are unpersuaded by the plaintiff's argument that the notice of substitution was valid because the lease actually contemplated that work on the substitute premises would not be fully completed at the time that notice was given. Although the relocation clause does provide that work on the substitute premises did not have to be completed at the time that notice of substitution was given, it does not contemplate that the substitute premises would not even have been constructed at such time. The relocation clause limits the work to be completed at the time that notice of substitution is given to the furnishing and installation of fixtures, improvements, and appurtenances in the substitute premises. Accordingly, the plaintiff's argument fails.

[6] The defendant also argues that the plaintiff's notice of substitution was invalid because the plaintiff did not send the notice in a manner in which proof of receipt was required as contemplated by the notice provisions of the lease. In light of our conclusion that the notice of substitution was invalid because a condition precedent to its issuance was not fulfilled, we need not address this issue.

---